UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| **BOBBY JOE POYNTER,** | **CIVIL ACTION NO. 6:21-58-KKC-HAI** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **WHITLEY COUNTY DETENTION CENTER, et al.,** | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' motion for summary judgment.  (DE 67.)  For the following reasons, the Court GRANTS the motion in part and DENIES the motion in part.

## I.  Facts

Plaintiff Bobby Joe Poynter was arrested on April 11, 2020 by the Whitley County Sherrif's Department and taken to the Whitley County Detention Center. (Compl. ¶ 9.) The parties' versions of what happened once he was at the jail vary drastically. Accordingly, the Court will recount each sides' sworn narratives.

### a.  Plaintiff's Version of Events

Poynter testified that as he was being booked at the jail, he overheard conversations indicating that he was going to get beat by jail staff and inmates. (Poynter Depo. at 54.) Later that day, he was sitting quietly in his cell when Deputy Claxton approached and asked if he was kicking the door of his cell. Poynter responded "no." Claxton then sprayed an entire can of mace in Poynter's face. (*Id.* at 60-61.) After he was sprayed with mace,

multiple guards threw Poynter into the shower, slammed him to the ground, and punched him. Poynter claims the deputies then gave him a gown to wear that had been sprayed with mace. (*Id.* 67.) When he complained about the gown burning him, Claxton told him to "Deal with it." (*Id.*)

Later in the day, Poynter claimed to be suicidal in order to receive medical attention. To deal with his claim, Deputies Claxton and Chancellor came to retrieve Poynter from his cell to take him to the intake shower. (*Id.*) On the way there, Poynter complained to the deputies about the earlier assault. Claxton then put him in a chokehold and the deputies began punching Poynter. (*Id.* at 68.) Poynter escaped the shower room but was then tackled by trustees who began stomping on him and hitting him. (*Id.*) Claxton and Chancellor joined in on the beating which lasted about five minutes. Poynter was then placed in a restraint chair.

### b. Defendants' Version of Events

According to Defendants, Poynter was in his cell screaming and kicking the door when Deputies Claxton and Chancellor approached. (Claxton Depo. at 51.) Claxton warned Poynter if he did not stop, he would be sprayed with mace. (*Id.*) When Poynter continued kicking, Claxton and Chancellor entered the cell. (Chancellor Depo. at 32.) Upon entering, Poynter swung at them, so Claxton sprayed him with mace for approximately two seconds. (*Id.*) After he was sprayed, Claxton took Poynter to the nurse to be checked out. There was no force used throughout the incident.

Later in the afternoon, Poynter was screaming and kicking his cell door again and claimed to be suicidal. (Claxton Depo. at 55.) Since he claimed to be suicidal, Claxton and Chancellor took him to the shower room so they could put him in a suit for the restraining

chair. (*Id.*) Once in the shower room, Poynter became combative. (*Id.*) The deputies told Poynter to sit on a bench, but he would not comply. (*Id.*) Instead, he started swinging punches and tried to run out the door. (*Id.*) At that point, Chancellor and Claxton grabbed him, scuffled with him, took him to the floor, and cuffed him. (*Id.*) The deputies then got Poynter up and set him on a bench till he calmed down. (*Id.*)  They then put him in the turtle suit and placed Poynter in the restraining chair. (*Id.*)

### c.  Procedural History

Poynter filed a complaint against Whitley County Detention Center, Whitley County Fiscal Court, Jailer Brian Lawson (individually), Deputy Steve Claxton (individually), and Deputy Bobby Chancellor (individually). (DE 1.) In the Complaint, Poynter asserts the following: 42 U.S.C. § 1983 excessive force claim against Claxton and Chancellor (Count I); § 1983 negligent hiring, training, and supervision claim against Lawson (Count II); § 1983 negligent hiring, training, and supervision claim against the Fiscal Court (Count III); negligence against Lawson, Claxton, and Chancellor (Count IV); negligence per se claim against the Lawson, Claxton, and Chancellor (Count V); battery claim against Claxton and Chancellor (Count VI); negligent hiring and retention claim against Lawson (Count VII); and punitive damages (Count VIII).

## II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation

marks omitted).  All evidence, facts, and inferences must be viewed in favor of the non-moving party.  *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "In order to defeat a summary judgment motion, . . . [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor."  *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III. Analysis

### A.  Federal Claims

Poynter brings § 1983 claims under the Fourth, Eighth, and Fourteenth Amendments against Deputies Claxton and Chancellor and Jailer Lawson. As an initial matter, Poynter's claims are only governed by the Fourth Amendment. Whether an excessive force claim arises under the Fourth, Eighth, or Fourteenth Amendments depends on the plaintiff's status at the time of the incident. *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015). The Fourth Amendment applies when a free citizen is claiming an officer used excessive force during an arrest, seizure, or an investigatory stop. *Id.* This protection lasts through police booking up until the completion of a probable cause hearing. *Id.* Once a prisoner is convicted, the Eighth Amendment governs any excessive force claims brought. *Id.* The Fourteenth Amendment applies to the "gray area" between the two. *Id.* (citations omitted). In this case, at the time of the incidents at issue, Poynter had been arrested and booked at the Whitley County Detention Center. He had not yet appeared in front of a judge. Accordingly, his claim falls under the Fourth Amendment and Defendants will be granted summary judgment on Poynter's claims asserted under the Eighth and Fourteenth Amendments.

## 1. § 1983 Claims Against Deputies Claxton and Chancellor (Count 1)

Claxton and Chancellor raise qualified immunity as a defense to Poynter's § 1983 claims. The qualified-immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court conducts a two-step inquiry when considering a claim for qualified immunity. *Id.* At the first step, the Court asks whether the facts viewed in the light most favorable to the plaintiff show that the officer has violated the plaintiff's constitutional right. *Id.* At the second step, the Court asks whether the right was clearly established at the time of the violation. *Id.* "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (internal quotation marks, citation, and alterations omitted)). Plaintiff has the burden to show that a defendant is not entitled to qualified immunity. *Id.*

In this case, there are many factual disputes about the incidents in question. For the purpose of summary judgment, however, the Court must resolve these disputes in plaintiff's favor. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992). Accordingly, the Court will analyze whether, according to plaintiff's sworn version of events, Claxton and Chancellor violated Poynter's clearly established constitutional rights.

First, the Court will analyze whether Claxton and Chancellor violated Poynter's constitutional rights. As discussed previously, Poynter's claim must be analyzed under the

Fourth Amendment. Under the Fourth Amendment, the lawfulness of the officers' conduct is judged based on whether the officers acted objectively reasonable considering the circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 397 (1989). If the plaintiff alleges excessive force during the course of an incident based on different grounds, the incident must be analyzed "in segments when assessing the reasonableness of the officer's actions." *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009).

The first incident, according to Poynter, involved Deputy Claxton spraying Poynter with an entire can of mace unprovoked. Thus, the Court must analyze whether this conduct was reasonable given the circumstances. Existing case law concerning the use of mace on prisoners is largely analyzed under the Eighth Amendment. Under the Eighth Amendment, prisoners alleging excessive force must show that the conduct by a government official was "objectively harmful enough to establish a constitutional violation," and that the official acted "with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1,8 (1992). Since this is a higher standard than the Fourth Amendment's objective reasonableness standard, a violation of the Eighth Amendment necessarily qualifies as a violation of the Fourth Amendment too. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (finding that the due process rights of a detainee are "at least as great" as the protections available to convicted prisoners under the Eighth Amendment[1]).

---

[1] Although *City of Revere* concerns Fourteenth Amendment due process rights, a pretrial detainee's excessive force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment. *Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015). So, conduct sufficient to violate the Eighth Amendment would violate both the Fourteenth and Fourth Amendments as well.

In the Eighth Amendment context, the use of mace on prisoners when they are not actively disobedient is prohibited. *Roberson v. Torres*, 770 F.3d 398, 406-07 (6th Cir. 2014) (qualified immunity denied where officer used mace to wake sleeping prisoner); *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir.2011). In *Williams*, the court held that a prisoner stated a valid excessive-force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?' at which point an 'assault team' entered the cell and used a chemical agent on him." *Id.* Although the use of mace on recalcitrant prisoners is constitutional, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

In this case, Poynter alleges that he was quietly sitting in his cell when Deputy Claxton approached and asked if he was kicking his cell door. (Poynter Depo. at 60-61.) When he responded "no," Claxton sprayed him in the face with an entire can of mace. (*Id.*) This conduct is at least as unacceptable as *Williams*, where a prisoner was maced for asking a question in response to a command. Since this amounts to a violation of the Eighth Amendment, it must be found to violate the Fourth Amendment's objective reasonableness standard as well.

The next question is whether the conduct violated clearly established law. In *Williams* the court held that a prisoner stated an Eighth Amendment claim for excessive force when an officer allegedly sprayed him with mace after he asked why he needed to pack up his belongings. *Williams*, 631 F.3d at 384. Here, under the facts alleged, Poynter was responding to a question posed by Claxton when he was sprayed. This situation falls squarely with *Williams* and is likely even more severe. Thus, Claxton's conduct would have

7

violated clearly established law under *Williams*. Because the alleged conduct amounts to a constitutional violation of clearly established law, Claxton is not entitled to qualified immunity on summary judgment.

In the second incident, Poynter claims he was "sucker punched" by Chancellor and put in a chokehold by Claxton when he asked about the previous incident. (Poynter Depo. at 67-68.) He then alleges that when he tried to escape, Chancellor and Claxton, along with unnamed inmate trustees, beat him and stomped on him for approximately five minutes. (*Id.*)

The law is clear that force can be excessive if the person receiving the force is compliant. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir.2004). There is no government interest in striking someone who is neither resisting nor trying to flee. *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir.2006) (unreasonable to tackle a cuffed and compliant suspect); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir.1988) (holding blow to cuffed, unresisting suspect unreasonable). Therefore, if Poynter was not resisting, as he claims, then the officers' alleged conduct was excessive. Additionally, although tackling him when he escaped their hold may have been reasonable, Poynter claims that the officers also beat him for an extended period. If believed by a jury, such conduct would constitute a Fourth Amendment violation of clearly established law.

Since the Court is confronted with two entirely different versions of the facts, the Court cannot find that Claxton and Chancellor are entitled to qualified immunity at this stage, nor can it grant summary judgment on Poynter's § 1983 excessive force claims. *See Lopez v. City of Cleveland*, 625 F. App'x. 742, 747 (6th Cir. 2015) ("[W]here the reasonableness of the officers' use of force depends on which version of the facts one

accepts, "the jury, not the judge, must determine liability.").

### 2. § 1983 Failure to Adequately Hire, Train, and Supervise Claims

#### a. Against Lawson (Count 2)

To establish supervisory liability, a plaintiff must establish that the supervisory official "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (citation and quotation marks omitted). Supervisory liability will only attach if the supervisor "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley*, 799 F.3d at 542 (citation and quotation marks omitted). A supervisor's negligence or recklessness is insufficient to impose liability. *See Does v. Whitmer*, 69 F.4th 300, 307 (6th Cir. 2023). The plaintiff must therefore point to a "specific action" of the supervisor that contributed to the constitutional violation. *See Phillips*, 534 F.3d at 544.

Poynter has produced no evidence suggesting that Lawson encouraged the alleged attack by Claxton and Chancellor or in any way participated in it. In fact, it is undisputed that Lawson was not even present during the incidents, and Poynter points to no evidence that Lawson ratified the Deputies' conduct. Accordingly, the supervisory liability claim against Lawson fails.

Further, the Sixth Circuit has found that without such personal involvement - an attempt to hold an officer liable in his individual capacity for his "alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008));

*see also Heyerman*, 680 F.3d at 646-48 (finding that absent evidence of personal involvement in the alleged underlying misconduct, the defendant county official could not be individually liable based on her failure to train or supervise). Thus, absent personal involvement, a failure-to-train claim against an individual official is properly deemed to be brought against them in their official capacity and treated as a claim against the municipality. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).

To prove § 1983 liability on a failure-to-train theory, Plaintiff must prove three elements: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir.2008) (internal quotation marks and citations omitted). In a failure-to-train claim, the plaintiff's injury must be a "highly predictable consequence" of inadequate training. *See Connick v. Thompson*, 563 U.S. 51, 64 (2011) (internal citation omitted). "[F]ailure-to-train claims are notoriously difficult to prove." *Green v. Tenn.*, No. 3:17-CV-01293, 2020 U.S. Dist. LEXIS 218536, 2020 WL 6874946, at *6 (M.D. Tenn. Nov. 23, 2020). The Supreme Court has held that a government entity's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 60. Proving deliberate indifference for failure to train requires plaintiffs to "show prior instances of unconstitutional conduct demonstrating that the [Defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Marcilis v. Redford Tp.*, 693 F.3d 589, 605 (6th Cir. 2012).

Regarding training programs, Lawson testified that the jail works with the

Department of Corrections and goes by their guidelines. (Lawson Depo. at 14.) He also testified that the jail offers training to officers on how and when to use mace. (*Id.* at 115-16). Poynter points to no specific inadequacy in the training program. Poynter does not point to evidence in the record showing a pattern of similar constitutional violations to amount to deliberate indifference. Although he does mention other lawsuits against the Whitley County Detention Center, they are only vaguely mentioned and there is no indication of the outcome of such suits or whether constitutional violations were found in other situations. Similarly, Poynter includes excerpts of retained expert Jeff Eiser's report in his response that cite other cases against Whitley County Detention Center that he has been involved in. (DE 71-2 at 29.) He does not, however, make any factual comparisons or state the outcomes of these cases, which would establish a pattern of constitutional violations necessary to succeed on a failure to train claim.

Last, Poynter has not provided any facts showing that a failure to train was the moving force behind the alleged incident. It is insufficient to allege that an accident would have been avoided if an employee had more or better training. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Accordingly, the Court will enter summary judgment in favor of Defendants on the failure to train and supervise claim against Lawson.

### b. Against Whitley County Fiscal Court (Count 3)

§ 1983 claims against municipalities are not cognizable based on a theory of respondeat superior. *See Griffith v. Franklin Cnty.*, 975 F.3d 554, 579 (6th Cir. 2020). Instead, if a plaintiff seeks to hold a municipality liable for an employee-inflicted injury, the plaintiff must "connect the employee's conduct to a municipal 'policy' or 'custom.'" *Gambrel*, 25 F.4th at 408. The plaintiff can do so by showing "(1) the existence of an illegal

official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Griffith*, 975 F.3d at 581 (citation and quotation marks omitted).

Poynter seeks to hold Whitley County Fiscal Court liable by claiming it has a policy of inadequate training and supervision. (DE 1 at 10.) To establish a failure-to-train or -supervise claim, the plaintiff must demonstrate that (1) "the training or supervision was inadequate for the tasks performed;" (2) the municipality acted with "deliberate indifference" to the fact that "its inadequate training or supervision would lead its agents to violate constitutional rights;" and (3) the inadequate training or supervision "actually caused the plaintiff's injury." *Mosier*, 2024 WL 93974, at *5 (citation and quotation marks omitted); *Gambrel*, 25 F.4th at 408. A municipality acts with "deliberate indifference" if the "violation of a clearly established right was a known or obvious consequence" of the inadequate training or supervision. *Gambrel*, 25 F.4th at 408 (citation and quotation marks omitted). Typically, this requires proof that the municipality failed to act "in the face of repeated, known rights violations," including a "pattern of similar constitutional violations." *See id.*; *Mosier*, 2024 WL 93974, at *5. The plaintiff must also prove "but-for" causation and proximate causation. *See Gambrel*, 25 F.4th at 408.

First, by statute, the Fiscal Court has no oversight over the training standards for county jails; that authority belongs to the Department of Corrections. *See* Ky. Rev. Stat. §§ 441.055(1)(a)(1)(d), 441.115(1). The Fiscal Court prescribes rules governing proper jail operation, § 441.045(1), but has no oversight over the daily operations of the jail; that authority belongs to the jailer. *See Sowders v. Atkins*, 646 S.W.2d 344, 347 (Ky. 1983)

("…the county judge-executives do not have any statutory authority over the management and operation of the jail…").

Despite this statutory lack of authority, Poynter attempts to hold the Fiscal Court responsible by pointing to its power to close the jail and its ability to request information from the jailer. (DE 71-2 at 33.) He does not, however, point to any specific policy of the Fiscal Court. Although Poynter argues that Judge Executive Pat White testified that he knew of lawsuits against the jail (White Depo., DE 63 at 36-37), he also testified that "the Fiscal Court has no direct authority over the operation of the facility under Kentucky statutes," and the only thing the Court could do is support a different candidate for Jailer in the next election. (*Id.* at 40-44.) Thus, even if the Fiscal Court was aware of any misconduct at the jail, Poynter has failed to prove that the Fiscal Court's actions caused the incidents at issue. Accordingly, the Court will enter summary judgment for Whitley County Fiscal Court on Poynter's claims against it.

**B. State Law Claims**

**1. Negligence, Negligence Per Se, Negligent Hiring, Training, and Retention Claims (Counts 4, 5, and 7)**

Plaintiff brought state-law claims of negligence, negligence per se, and negligent hiring, training and retention against various defendants. Defendants moved for summary judgment on these claims. In his response to their motion, Poynter appears to concede that the claims should be dismissed as he does not provide any substantive response. (DE 71-2 at 34.) "[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Smith v. Windstream*

*Commc'ns, Inc.*, No. CIV. 11-272-GFVT, 2013 WL 3233488, at *5 (E.D. Ky. June 25, 2013) (citation and quotation marks omitted); see also Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *Scott v. State of Tenn.*, 878 F.2d 382 (Table), 1989 WL 72470, at *2 (6th Cir. 1989) ("If a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). Since Poynter failed to respond to Defendants' arguments regarding these claims, he concedes that Defendants are entitled to immunity and these claims fail on their merits. Accordingly, the Court will dismiss these claims from the action.

## 2. Battery (Count 6)

Plaintiff also brings a claim of battery against Deputies Claxton and Chancellor. Defendants raise qualified immunity as a defense. (DE 67-2 at 30.) Under Kentucky law, a defendant is entitled to qualified immunity on a battery claim if his conduct was (1) a discretionary act or function; (2) taken "in good faith"; and (3) within the official scope of the defendant's authority. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Kentucky's qualified immunity inquiry follows a burden-shifting scheme similar to the federal analysis. *See id.* at 523. The defendant must first make a prima facie showing that "the act was performed within the scope of [his] discretionary authority." *Id.* Then, "the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith," i.e., bad faith. *Id.*; *see also Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006), ("'Good faith,' however,

14

is somewhat of a misnomer, as the proof is really of 'bad faith.' In fact, in most cases, 'good faith' is just a presumption that exists absent evidence of 'bad faith.'"). In contrast to federal qualified immunity, in Kentucky, a plaintiff can premise bad faith on either an objective or subjective basis. *See Grant v. Wilson*, Civil No. 6:19-cv-00165-GFVT-HAI, 2021 WL 2636010, at *11 (E.D. Ky. June 25, 2021); *Hartman v. Thompson*, CIVIL ACTION NO. 3:16-CV-00114-GNS-DW, 2018 WL 793440, at *13 (W.D. Ky. Feb. 7, 2018). Therefore, a plaintiff can overcome a qualified immunity defense by demonstrating that the official "knew or reasonably should have known that the action he took" violated "'a constitutional, statutory, or other clearly established right'" (objective) or that he "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury" (subjective). *Grant*, 2021 WL 2636010, at *11 (quoting *Yanero*, 65 S.W.3d at 523); *Fletcher-Hope v. Louisville Metro Gov't*, No. 318CV00469RGJRSE, 2020 WL 1644040, at *5 (W.D. Ky. Apr. 2, 2020) (citation and quotation marks omitted). At all times, the plaintiff bears the burden of establishing the lack of good faith. *See Fletcher-Hope*, 2020 WL 1644040, at *5–6.

When applied to this case, there are sufficient facts to determine that Deputies Claxton and Chancellor were acting within the scope of their discretionary function as deputies. *Grant v. Wilson*, No. 619CV00165GFVTHAI, 2021 WL 2636010 at *11 (E.D. Ky. June 25, 2021) ("It is well established that a[n]…officer's decision of how much force is required in a particular decision is a discretionary act.").

Because Deputies Claxton and Chancellor's actions were discretionary, the burden shifts to Poynter to establish that their conduct was in bad faith. Poynter's sworn deposition testimony alleges that Claxton sprayed him with an entire can of mace for no

reason, the Deputies punched him and put him in a chokehold when he asked them a question, and that Claxton and Chancellor beat him and stomped on him for five minutes. If true, the officers should have reasonably known that their conduct amounted to a constitutional violation. Although there are different versions of what happened, these factual disputes preclude granting qualified immunity to Claxton and Chancellor. For the same reasons, summary judgment cannot be granted on the battery claim.

**C. Punitive Damages (Count VIII)**

Poynter also brings a claim for punitive damages against Chancellor, Claxton, and Lawson. (DE 1.) Under KRS § 411.184, a plaintiff can recover punitive damages upon providing clear and convincing evidence that the defendants from whom such damages are sought acted toward the plaintiff with oppression, fraud, or malice. In Kentucky, punitive damages may be awarded in a battery case where the assault is willful, malicious and without justification. *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001). The assessment of punitive damages is a factual determination to be made by the fact-finder. *See Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 412 (Ky. 1998) (holding "the jury is to consider not only the defendant's conduct, but the relationship of that conduct to the injury suffered by this particular plaintiff[]").

Punitive damages are also recoverable under § 1983 when an individual is sued in their individual capacity. *Smith v. Wade*, 461 U.S. 30 (1983). Accordingly, the Court cannot grant summary judgment on the punitive damages claims against Deputies Claxton and Chancellor, but the Court will grant summary judgment for Jailer Lawson.

### D. Claims Against Detention Center

Finally, Poynter lists the Detention Center as a defendant in his complaint but does not explicitly raise any cause of action against the Detention Center. Because Poynter has not asserted a cognizable claim against the Detention Center (really, a subset of the County itself), the Court dismisses the Detention Center as a party to this action. *Cf. McGlory v. Michigan Dep't of Corr.*, No. 21-2692, 2022 WL 18229595, at *2 (6th Cir. July 27, 2022) (finding that a complaint failed to state a claim for relief where it "identified the defendants in the caption and list of parties but did not connect either defendant to any specific conduct in the statement of claim)."

### IV. Conclusion

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Summary Judgment (DE 67) is GRANTED IN PART and DENIED IN PART as follows:

1.) The motion is GRANTED as to Poynter's claims against Whitley County Detention Center, Whitley County Fiscal Court, and Brian Lawson, and judgment is entered in favor of these defendants on all claims against them;

2.) Poynter's negligence, negligence per se, and negligent hiring, training, and retention claims (Counts IV, V, and VII) are DISMISSED WITH PREJUDICE;

3.) The motion is otherwise DENIED; and

4.) As a result of this opinion, Poynter may proceed only on his § 1983 excessive force claim and battery claim against Steve Claxton and Bobby Chancellor.

This 22nd day of March, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY